v. Ocwen Loan Servicing, L Ocwen Loan Servicing, L v. Ocwen Loan Servicing, It cuts off on September 1, 2015. What is your best case that prior to that date the payment of taxes and interest, and we also conclude that I think chapter 41 applies, that you have to have some actual damages before you get the penalty? Again, assuming. What are the best case or cases that say that payment of interest and taxes are actual damages? Well, the only thing I can argue that, Your Honor, is that if she had, as actual damages, if she had, they had given her the title when they were supposed to in 2014, and it was in the record, she had attempted or looked for prospective buyers, and they couldn't because she didn't have a deed. She didn't have title to it. The only thing, and I may have misread the brief, the only thing I saw on the record was that she argued was because of that lost sale in January of 2015 that she continued to pay interest and taxes after that date. Right. What is your best case that that constitutes actual damages for purposes of chapter 41? If she would have been able to sell a house, she would have not had to pay those taxes. What's your best case that says that? You mean a legal case? Yes. I don't have one, Your Honor. I'm sorry. Did she ask in January of 2015 for the record title holder to give her a deed? On that particular date, I don't think so. She put them on notice that she was about to lose a sale and that you better give me a deed or I'm going to lose this sale and I'm going to, you know. Subsequent to that, I'm not sure it's in the record when Walter Wilson sent a demand letter and they didn't do it for another year? I think that was in December of 2015, and they didn't release it until August of 2016. That sounds right. But I'm just saying she made no demand and said, hey, I'm going to lose this sale. She didn't put them on any kind of notice? At that time, I don't think there's any evidence in the record of that effect, Your Honor. Okay. Is there any case law that talks about for actual damages purposes, they have to be on notice one way or the other? No. Not that I can think of, and the statute certainly doesn't provide for it. There's no, like the deceptive trade practice. You've got to send a notice and do all this business. There's nothing as far as I know in the statute that requires it. I'm just, the case law construing the statute or these types of, quote, penalties. I read some cases on this. I didn't see where that was an issue on any of them, Your Honor. Okay. And finally, anyway, as far as the residents, I think the record certainly supports this and at least there's a fact question. I mean, there may be situations where, you know, should they really buy it for a resident or they didn't, and you have evidence going one way or the other, and the Ocwen cites some of those cases that the court went for them on the, but it was on the basis of the no genuine issue of material fact. This is different. We do not, you do not have to have a continuous and uninterrupted residential, you don't have to continuously and uninterruptedly reside there for the whole period of time because the thing is, does it qualify in the first place? Is it that they buy it as a resident? They bought it as a resident. The fact that they sold it several years later doesn't affect it. Anyway, the last issue is an authority question that I think in their view they brought up. The court didn't rule on it. They believe that the Texas Statute 41.001 APSEC applies to our case. It applies to 5.079 that talks about liquidated damages. They point out the fact, and we're disputing, we think there's some damages, it's kind of hard to prove them an exact amount because that's the point. You can't sell a house if you don't have title. What was the loss of the sale? We don't know. Nobody's going to buy a house if you don't have title to it. They discussed it and didn't go any further. Now, which I get in response to your question earlier about the notice. I suppose they could bring it back as a mitigating factor in the damage because everybody's supposed to mitigate. I suppose they could argue that. Anyway, at that point in time. I wonder if there's some case law on it. No, I haven't said it. No, I haven't. Sorry. So what we're arguing to the court is that, as the court well knows, the Fifth Circuit sent a question to the Texas Supreme Court in the Flores v. Millennium interest. And one of the questions was, does 5.079 require actual damages? The court said no. So that's where we are now. Well, but the Supreme Court made it ambiguous as to what they meant. The third thing that they answered. I was getting to that. The third thing is they passed on the question we're here about today, the point they're bringing up. They did not address that point, that whether or not the Texas statute on exemplary damages applies to 5.079. And we would argue that it doesn't. And I've got some questions myself about what is Ocwin contending, that the whole statute is grafted onto 41.001, is grafted onto 5.079 to staple it to it? Do we have to prove malice, fraud, gross negligence? If that's the case, you're never going to get any damages under 5.079, even the least stringent condition. Gross negligence? It's a subjective intent that they're taking this risk and don't care. And how are you ever going to prove that? Well, you're not. Unless they write a letter saying, yeah, I know we're supposed to, but we're just not going to do it, and that's not going to happen. They can just plead complete ignorance. We believe that 5.079 has been looked at and reviewed many times since the enactment of that statute 40, the statute governing the exemplary damages, and they didn't make any changes. So the latest statute, in effect, is 5.079. We believe there's a conflict, and the latest statute should govern. They still have the, they made other changes. They still have the provisions about the liquidated damages. And with that in mind, they, and I couldn't find any, because it just hadn't come up. Maybe opposing counsel has, but can a plaintiff even sue for compensatory damages? It's not in the statute. So I don't know. That's a question. That would be the next line of defense, I assume. But in any event, Your Honors, we believe that some other things. I mean, do you get a jury, are they supposed to give the jury a charge on exemplary damages? Is there a bifurcative trial on the damage issue? Is it clear and convincing evidence? I'm wondering if Ackman is saying we just adopt the entire statute, or do we adopt this one procedure, but this one particular portion of the statute that says there must be actual damages before you can recover the liquidated damages. I don't know. But it sure creates a mess, if that's the case. I don't think the Supreme Court really meant to do that, and I don't think it will. I'll come back later. Can we certify this question to the Supreme Court? I think it would be a good idea, yes. There's some civil appeals opinions that are going to point out that rule in their favor. There's others that adopted the Flores and relied on what the law was at the time that actual damages aren't required by the statute. And I'm frankly surprised they haven't actually addressed it yet, but they have. All right. Thank you, sir. We'll see you back up on rebuttal. All right. Counsel? May it please the Court. I'm Chris Cradiville, and with my colleague, Adam Nunley from the law firm of Dykema, we're here on behalf of the appellees, the Bank of New York, and Ocwin Loon Servicing. Your Honors, appellant seeks an inequitable and improper windfall that's unmoored from any showing of actual damages and without any malicious conduct on the part of the appellees. Indeed, the appellant seeks exemplary damages almost 10 times the purchase price of this home and almost 50 times the amount of the only dollar figure listed in their petition or testified to in the appellant's deposition, and that, as Judge Owen pointed out, was for approximately $6,000 in insurance and property taxes. Judge Owen, I believe you may have said interest, but in fact it's insurance, not interest. I just wanted to be clear on that. Unfortunately for the appellant, there are at least three independent reasons to affirm the district court's grant of summary judgment, which denied her this massive and inequitable windfall. Before I recite those three independent reasons, I'd like to point out what this case is not about. It's not about any of the usual nonsense you see from banks and loan servicers. There's no allegation of extra fees, collection of extra payments, failure to disclose essential information, collecting money that's not owed, charging improper penalties. None of the usual parade of horribles that banks and mortgage servicers are accused of are at issue here. Instead, there is a technical violation, alleged violation, I should say, that did not yield any actual damages. And we have here an unusual... Perhaps legislatures provide liquidated damages because it's so hard to prove actual damages. Well, Your Honor, that is true as a general principle. Here I would suggest it's not hard to prove actual damages with the slander of title action. And that's the original action that this plaintiff appellant brought. And if a sale, a specific sale, to a specific buyer for a specific amount had failed as a result of not having a warranty deed from the Bank of New York, she would have a very good actual damages case. But there's no evidence of that in this record. And indeed, I would point the panel to a Texas Supreme Court case called LSV Waldrop, cited in our briefing to the trial court but didn't come up in our briefing to this court. It's 656 Southwest 2nd, 902. The pinpoint is 90405, Texas Supreme Court, 1983. It stands for the proposition that actual damages for slander of title require a specific sale to be lost. Here, in this plaintiff appellant's deposition, there was some very general testimony about a possible sale that never culminated in a specific offer, a specific price, and there's certainly no evidence it was thwarted by the absence of a warranty deed from the Bank of New York. So I would suggest this particular plaintiff appellant had a very easy path. What if I don't want slander of title? I want to get a home equity loan. I say, look, I don't have title. I don't want to leave this for my heirs to figure out. I won't give me title to my property. I'm entitled to it. And they say, we don't have to. I think the Texas legislature did provide a mechanism for that, and that's where 5.081 of the property code comes in, and that's the conversion, the ability to convert one of these executory contracts or contracts for deeds into a traditional mortgage to thereby show the amount of equity that the purchaser has acquired. So the legislature, Judge Owen... Well, it gives you equitable title, not full legal title. I agree she had equitable title, and I agree that equitable title was reported. She pays, she goes to the mortgage company, says, give me a deed, and they said no. She requested a deed in August... I'm sorry, December of 2015, and they didn't act for it until August of 16 after... of 16 after she filed suit. That is the correct chronology, Your Honor, but there are no actual damages flowing from that, and there's not strict compliance with the statute. So we have a fairly draconian penalty statute. What strict compliance is there? Well, she wasn't living in the home during much of the period... We disagree with you on that. Well, she's seeking liquidated damages, Your Honor, for dates where this was not a residence. That's the heart of her liquidated damages number. Let's also assume she's only entitled to liquidated damages through September 1 of 2015. Well, I think Your Honor has put your finger on the exact question that's really ultimately before this Court. All I'm saying is it's plausible that the legislature could say, look, you should... once that executory contract is paid off, you need to execute a deed. You've got 30 days to do it, and because actual damages in some cases may be hard to prove, we're going to provide for liquidated damages. Then I think we go to... Why is that a plausible reading in the statute? I think that is a plausible reading. I think there's an equally plausible reading that's actually reinforced by the September 1, 2015 amendment. And this is the fundamental question that's at issue in this case, Judge Owen, and that's the question of whether the September 1, 2015 amendment codified and clarified existing Texas law, and that's what we argue and that's what Judge Janel found below. He uses the word clarify Texas law in his summary judgment opinion, or whether it's a fundamental modification of Texas law. And I would suggest... And that's, of course, their position, that it changed where the recording of an executory contract creates functions as a warranty deed. That's the law unambiguously, clearly. Well, clearly the law didn't say that. The case law did not say that prior to 2015. The case law said you have equitable title. You do not have legal title. And that, of course, would be the same for a traditional mortgage in that the full legal title is only realized when that vendor's lien... You get a deed, though. At closing, you get a deed. There's a big difference there. That is true, but, Judge, I think what the district court keyed on and what we believe shows that September 1, 2015 was a clarification and a codification of the law of the statutory scheme. And as the Texas Supreme Court held in Flores, this statute, as originally drafted, is not a model of clarity, and that's unfortunate. But that's why the September 1, 2015 amendment was, we believe, necessary to clarify the state of the law. And the state of the law was, if you look at the remedies that are provided, if you look at the different remedies that flow as between a recorded executory contract, which is what we have here, and an unrecorded executory contract, they're different sets of remedies. The remedy for a recorded executory contract is not rescission. It's foreclosure. That's the lender's remedy. We're talking about the purchaser. But just in interpreting the statute, Judge Owen, just in trying to figure out what that amendment was meant to do, to change the law or to clarify the law. We say it's to clarify the law. He says it's to change the law. If it was to change the law, then that remedial scheme that existed as before September 1, 2015 doesn't make any sense. If all it is is a... it's not a interest, it wouldn't support the remedy of foreclosure. The recorded executory contract supports the remedy of foreclosure. The unrecorded executory contract allows rescission and forfeiture. Those are fundamentally different remedies, and that's what gives us the best insight into the Texas legislature's thinking when it passed the original version of this statute in 1995. So it's a relatively young statute, 1995 to this modification in 2015. That's why I think there's a bit of a dearth of case law, Judge Owen, and let's keep in mind, as former Justice Wainwright pointed out in his concurrence in Flores, which I think is a very important concurrence, what this statute was aimed to do. It was aimed to protect low-income buyers of so-called colonias homes along the Texas-Mexico border who don't have access to the traditional mortgage system. This case is very far removed from the colonias system outside El Paso and in the Rio Grande Valley. This is a much more traditional purchase that was recorded in the property records of Hector County, Texas and was convertible under 5.081. And as Your Honor asked my opposing counsel, is there evidence that she asked for a title? No, she had the ability to proceed under 5.081. She never did. This business about Judge Janelle including 5.081 in his summary judgment opinion, it's caused opposing counsel some confusion or consternation. I think I can clear that up. One of the two statutes under which he seeks liquidated damages is 5.081. That was just the district court disposing of his 5.081 claim. The other claim is under 5.079. That's the more central, the flagship claim related to the failure to immediately yield up a warranty deed. Now, Judge, even if my opposing counsel is right and the amendments of September 1st, 2015 represented a fundamental change of Texas law rather than, as Judge Janelle found, a clarification of Texas law, there's still as Your Honor Judge Owen already pointed out the tremendous obstacle of Civil Practice and Remedies Code Chapter 41. Chapter 41 is almost universally applicable to claims in Texas unless there is a carve out in the statute. There is no carve out from Section 41 in the property code 5.079 or 5.081. And so what does Section 41 do? It requires a showing of actual damages in order to recover exemplary damages. Here, all they seek is exemplary damages. Indeed, when Boney Bank of New York gave title on August 9th, 2015 in response to this lawsuit, gave the warranty deed that this plaintiff appellate sought, how did she react? Did that end the matter? No. She amended to the current live version of her pleading, September 6, 2016 version of her pleading, which suddenly seeks only liquidated damages. It went from a situation in which the plaintiff appellate was seeking a warranty deed from the Bank of New York to a situation in which she's seeking over $300,000 in liquidated damages on a $37,000 house purchase and $6,000 worth of taxes and insurance. And I would respectfully suggest that those taxes and insurance in no way represent actual damages. And that's consistent with Plaintiff Appellant's testimony in deposition. She paid taxes because it was her understanding, her correct understanding, that if those taxes aren't paid, the taxing authorities could in time seize the house. She was protecting her interest in that house. Whatever the legal definition of that interest, she has an interest, is, she was protecting it after September 1, 2015. She lost a sale in January of 2015. She's not trying to prove lost profits or anything like that. She says, I did have actual damage, though, because I continued to pay property taxes and insurance after January of 2015, whereas if I'd sold the property, I would have gotten my money in. Well, but that loops us back to L.S.V. Waldrop, Your Honor, that it's not enough to say, I might have had a sale on a good day. You've got to have a firm offer, and it's got to be defeated by the lack of title. It's a slander of title. And that was her original action, and she non-suited her slander of title action. This would be an action, I would think, under 5.079 for not conveying, for not within 30 days. And she also had a contractual obligation. Why couldn't she sue for breach, simple breach of contract? You had an obligation to convey title, and you didn't. That's a breach. Am I actually... Your Honor, look at her live petition in the record. There's no breach of contract claim there. There's no slander of title claim there. All it seeks is liquidated damages under 5.079 and 5.081. 5.081 fails on its face because she never sought to convert within the meaning of the statute. 5.079 fails because this is a home that she no longer resides in, that she's used as a rental property, and that she's seeking damages for during the time she's using it as a rental property. She moved out of this home in January 2015. She began renting the home for $550 a month in April 2016. She already paid it off, the loan off. Why do we care what she did with it once the loan was paid off? It has nothing to do with it. I just think that's because that's the period for which she's seeking these damages. I mean, clearly her hands weren't tied if she's not residing in the property, if she can rent the property out during the period in which she's complaining she didn't have a warranty deed from Bank of New York. It again goes to that issue of damages. And her testimony is she paid insurance because she was worried about natural disasters. Her testimony is she paid taxes because she was worried about the taxing authorities taking the house away. She was protecting her interest as she understood it. She hasn't brought a breach of contract claim, and she non-suited with the amendment, her slander of title claim. All that leaves us this quest for massive liquidated damages unmoored from actual damages, unmoored from the sort of bad conduct that even in Flores, the Texas Supreme Court looked at 5.077, which is a companion piece to 5.079. Three certified questions from this court. First question was 5.077 violated? In Flores, the Texas Supreme Court majority held no, it was not. The conduct was not sufficiently bad, sufficiently outrageous to warrant those sorts of liquidated damages. Second certified question from this court, are those liquidated damages penal in nature? Certainly they are. That's essential. Third question from this court, the Texas Supreme Court declined to answer whether civil practice and remedies code section 41 applies. If section 41 applies, then there has to be that showing of actual damages and that correlation, that due process correlation between actual damages and the exemplary or punitive damages that flow from them. If we're at a ratio of 50 to 1, which is again the ratio they seek off of these payment of insurance and payment of taxes, a ratio of 50 to 1 actuals to exemplaries is off the constitutional map. BMW v. Gore and that entire line of authority from the U.S. Supreme Court. We don't get into that in our briefing because that did not seem, you know, that's not what the district court held. The district court did not get there in its analysis because I think there are three much simpler ways. I'm trying to get back to your argument about 5. 081. It seems to me that permits the purchaser to present a promissory note to the lender and then the lender has to give her accept the note and give her a deed. I would agree. That's the conversion process the statute establishes. If you don't do that within a certain amount of days, you get exemplary damages. And she never did that. Right. She never did that. But then separately, 5. 079 says if you still have an executory contract that's fully paid and the lender doesn't give you a deed within 30 days, then you get liquidated damages. It seems to me that those clearly contemplated situations where the purchaser had the right under 5. 081 to convert but chose not to, just chose to continue making the payments to the end of the executory contract. If you had to comply with 5. 081 before you get to 5. 079, that's nonsensical because you would never get to the end of an executory contract if you were required first to tender a promissory note to the lender. Explain to me how that's not fair. Your Honor, I view 5. 081 as a separate bucket that is in their live petition but that on the face, they didn't go down that path. They don't have to, it seems to me. So it's out. It's out. She could have gone to 5. 081 and she didn't, therefore she can't have the remedy under 5. 079. Right, so the question then becomes are we under old 5. 079 or new 5. 079 and what the District Court held and what Boney and Aquin argue is that because of the distinction in the remedies for recorded versus unrecorded and informed by the clarification of the Texas Legislature in new 5. 079 the filing of an executory contract in this case with the property records of Hector County has the same legal effect as a warranty deed. That's clearly the case as of September 1, 2015. We believe it was also the case that the Legislature was clarifying that existing state of the law based on the remedial scheme. That's why I don't understand the clarification because explain to me how that clarifies because prior to the amendment it seems clear to me that they thought that two different things could happen so I don't see how what happened in 15 was a clarification. I think it's that distinction between recorded and unrecorded. If recording an executory contract has no meaning, has no importance, has no legal significance, then why would anybody record it? And the protection, again going back to what this law was originally designed to do in 1995, Justice Wainwright's concurrence in Flores, it's about protecting the poorest of the poor along the Mexican border. I thought you could use 5.081 regardless of whether you previously recorded or not recorded the deed. I believe that's correct. Foreclosure is the remedy as we discussed, Judge Owen, the exclusive remedy when it's recorded as it was here. If it can be foreclosed then as a matter of law she has title. She has title and that's what allows us, Boney and Aquin, to foreclose. Also I would note in the divorce proceedings her ex-husband signed a warranty deed conveying to her his interest in this home, again implying that the recordation of the executory contract created a legal interest in this property, a recognized legal interest in this property as equivalent to a warranty deed just as after September 1, 2015, it's unambiguously and manifestly the same thing as a warranty deed. I see my red light is on. Unless the panel has any further questions, I will yield. Thank you, sir. Back to you, Mr. Storer. Yes, just briefly. Um, Aquin seems to complain that we no longer have a slander of title action because it requires specific sale, offer, and acceptance. We're all familiar with that evidentiary standard. That is just the problem with 5.079. Who is going to offer you money on a house when you do not have title to it? That's the whole point of 5.079, and that's the whole point of the legislature in enacting it. The something that ought to be noted is that I think the statute now requires the seller to record an executory contract. They changed it up in several respects. They require that the seller record the contract so that it would be a recorded executory contract. Now, and again, I don't know if this needs, and I won't but, the Aquin is asking the court to state that this clarification issue is just counter to what Texas law has been for years and years and years. That's not a clarification. It is certainly a change in the law. Intent of the legislature, if we're going to look at that, they keep looking again and again at the statute and still have liquidated damages in there, and don't at least expressly provide for a private cause of action for slander of title type damages. They've looked at it again and again and they still have it in there. So I think, Your Honors, this is what the law is now, and I ask for your judgment on this matter. All right. Thank you.